J. S51031/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF:  J.A., A MINOR   :     IN THE SUPERIOR COURT OF
                                                      :          PENNSYLVANIA
                                                      :
APPEAL OF:  T.J.A., FATHER         :         No. 948 EDA 2018

Appeal from the Decree, February 28, 2018,
in the Court of Common Pleas of Philadelphia County
Family Court Division at Nos. CP-51-AP-0000101-2018,
FID#51-FN-000992-2011

BEFORE:  DUBOW, J., NICHOLS, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED SEPTEMBER 07, 2018**

T.J.A. ("Father") appeals from the February 28, 2018 decree granting the petition of the Department of Human Services ("DHS") to involuntarily terminate his parental rights to his minor[1] female child, J.A. a/k/a J.A.S. ("Child"), pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), and (b).[2]  After careful review, we affirm.

The trial court summarized the underlying facts and procedural history of this case as follows:

> On January 31, 2017, [DHS] received a General Protective Services ("GPS") report alleging that the mother of Child was incorrectly mixing Child's infant formula.  The report further alleged that Child was underweight as result of the improper feeding.  The

---

[1] Child was born in April 2016.

[2] The record reflects that the trial court's February 28, 2018 decree also terminated the parental rights of M.E. ("Mother") to Child.  Mother is not a party to this appeal.

report also alleged that Mother had been diagnosed with mental health issues and that she exhibited aggressive behavior. DHS met Mother, Father and Child, on February 3, 2017 to discuss the allegations but thereafter the family failed to maintain contact with DHS. Thereafter, DHS reestablished contact and met with the family on April 10, 2017. It was determined on that date that Child remained underweight. On the same day, DHS obtained an Order for Protective Custody ("OPC") and Child was placed in foster care. On April 19, 2017, the Child, following a hearing, was adjudicated dependent.

On December 11, 2017, a revised Single Case Plan ("SCP") was created for Mother and Father. The objectives for Father were (1) to participate in all bi-weekly supervised visits of the Child; (2) to attend parenting classes; (3) to participate in a parenting capacity evaluation; (4) to engage in housing and employment classes; and (5) Father would comply with the court ordered recommendations of the Clinical Evaluation Unit's ("CEU") evaluation and assessment for drug and alcohol treatment. The underlying Petition to Terminate Father's Parental Rights was filed on February 5, 2018 after Father and Mother failed to meet their SCP objectives.

Trial court opinion, 5/11/18 at 2-3 (citations and footnote omitted).

On February 28, 2018, the trial court conducted a termination hearing; Father was present for said hearing and was represented by counsel. Following the hearing, the trial court entered a decree involuntarily terminating Father's parental rights to Child pursuant to Sections 2511(a)(1), (2), (5), and (b), and changed the goal to adoption. (*See* notes of testimony, 2/28/18 at 53-55.) In reaching this decision, the trial court noted during the hearing that "aggravated circumstances" existed as to Father given that his parental rights to another one of his children had

been involuntarily terminated in November 2017. (**See id.** at 30.) On March 22, 2018, Father filed a timely notice of appeal to this court, together with a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(2)(i). On May 11, 2018, the trial court filed its Pa.R.A.P. 1925(a) opinion.

Father raises the following issues for our review:

> 1. Whether the trial court committed reversible error, when it involuntarily terminated [F]ather's parental rights where such determination was not supported by clear and convincing evidence under the adoption act, 23 P[a].C.S.A. § 2511(a)(1) (2) and (5)[?]
>
> 2. Whether the trial court committed reversible error when it involuntarily terminated [F]ather's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of [C]hild as required by the adoption act, 23 P[a].C.S.A. § 2511(b)[?]
>
> 3. Whether the trial court erred because the evidence was overwhelming and undisputed that [F]ather demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with [C]hild[?]

Father's brief at 8.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the

> trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. [A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and internal quotation marks omitted). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination

delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined "clear and convincing evidence" as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (citation and quotation marks omitted).

In this case, the trial court terminated Father's parental rights pursuant to Sections 2511(a)(1), (2), (5), and (b), which provide as follows:

### § 2511. Grounds for involuntary termination

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . . .

**(b)** **Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and

> medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b). We need only agree with the trial court as to any one subsection of Section 2511(a), in addition to Section 2511(b), to affirm an order terminating parental rights. *In re M.M.*, 106 A.3d 114, 117 (Pa.Super. 2014).

Instantly, we analyze the trial court's decision to terminate under Sections 2511(a)(2) and (b).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.
>
> The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015) (citations, internal quotation marks, and indentation omitted).

Upon review, we find that there was clear and convincing evidence to support the trial court's termination of Father's parental rights to Child,

pursuant to Section 2511(a)(2). The record establishes that "incapacity" under Section 2511(a)(2) exists given that Father has demonstrated a repeated and continual inability to remedy the problems that led to Child's placement by failing to satisfy any of his SCP objectives. As noted, DHS became involved in this matter after concerns arose regarding Child's being significantly underweight. (Notes of testimony, 2/28/18 at 5.) At the time of the February 28, 2018 termination hearing, Child was 22 months old and had been in a pre-adoptive foster home for nearly 11 months. (*Id.* at 5-6.) Jessica Law, the Community Umbrella Agency case manager assigned to this matter, testified that Father's SCP objectives for reunification with Child included: (1) housing education classes; (2) parenting classes; (3) participation in supervised visitation with Child; (4) participation in a CEU evaluation to determine drug and alcohol abuse; and (5) participation in a parenting capacity evaluation. (*Id.* at 14-15.)

Law testified that as of the date of the termination hearing, Father had yet to participate in a parenting capacity evaluation with Forensic Mental Health Services, LLC. (*Id.* at 15-16.) Specifically, Father failed to show up for his first scheduled evaluation on September 19, 2017, and arrived late to his January 3, 2018 evaluation, resulting in the appointment being rescheduled. (*Id.*) Law also testified that Father had failed to participate in a drug or alcohol evaluation with CEU or complete court-ordered random drug screening. (*Id.* at 16.)

Law next testified that Father had failed, in large part, to take advantage of the housing, financial counseling, and parenting services offered by the Achieving Reunification Center ("ARC"). Specifically, Father was twice referred to ARC on April 19 and December 15, 2017, but as of the date of the termination hearing, had attended one housing class, no financial counseling classes, and four parenting classes. (*Id.* at 17-18.) Law also testified that Father failed to establish any stability in his life with regard to housing, had recently moved into a boarding house with Child's Mother that the trial court deemed inappropriate for reunification, and did not provide Law a mailing address until January 2018, three weeks before the termination hearing. (*Id.* at 16, 53-54.)

Additionally, the record reveals that Father has only sporadically visited Child. At the initial April 19, 2017 adjudicatory hearing, the trial court granted Father bi-weekly supervised visitation, but by the July 19, 2017 permanency review hearing, Father's visitation had been reduced to weekly due to his inconsistent attendance. (*Id.* at 18-19.) Thereafter, the trial court further reduced Father's visitation with Child to bi-weekly in November 2017. (*Id.*) Law testified that even after these changes, Father had only attended five of the seven scheduled bi-weekly visitation appointments with Child since the last court date. (*Id.*)

Father, in turn, testified on his own behalf at the termination hearing and stated that he missed supervised visitation with Child because the trial

court had precluded him from taking his drug tests; Father, however, was unable to explain exactly how the trial court had denied him his drug screenings. (Notes of testimony, 2/28/18 at 43-45.) Father also indicated that he was "somewhat" in a position to provide financial support for Child, but could not explain why he had failed to satisfy his SCP objectives thus far, and that he was "not making no [sic] excuses" and felt he had "done [his] part." (***Id.*** at 46-47.)

Based on the foregoing, we agree with the trial court that there exists clear and convincing evidence of record to justify the termination of Father's parental rights to Child pursuant to Section 2511(a)(2). ***See In re Adoption of C.D.R.***, 111 A.3d at 1216.

Next, we consider whether termination was proper under Section 2511(b). With regard to Section 2511(b), our supreme court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include [i]ntangibles such as love, comfort, security, and stability. . . . [T]his Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267 (internal case citations omitted).

"[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010) (citations omitted). Additionally, when evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010) (citations omitted).

Upon review, we find that the record supports the trial court's determination that the termination of Father's parental rights was clearly in the best interests of Child, pursuant to Section 2511(b). At the termination hearing, Law testified that Child had developed a strong "parental" bond with her foster parents, whom she has resided with since August 2017, and that they provide for her medical, emotional, and daily needs. (Notes of testimony, 2/28/18 at 12-13.) On the contrary, Law indicated that Father had failed to provide for any of Child's daily needs since she was placed into DHS custody, and had never attended Child's medical appointments nor provided her with any financial support. (*Id.* at 19-20.) Law opined that Child would not suffer any irreparable harm if Father's parental rights were terminated and that adoption would clearly be in her best interests. (*Id.* at

20.)  The trial court found the testimony of Law to "be credible and accorded [it] great weight."  (Trial court opinion, 5/11/18 at 6.)

This court has long recognized that "[a] child's life, happiness and vitality simply cannot be put on hold until the parent finds it convenient to perform parental duties."  *In the Matter of the Adoption of A.M.B.*, 812 A.2d 659, 675 (Pa.Super. 2002).  Our standard of review requires us to accept the trial court's findings of fact and credibility determinations where, as here, they are supported by the record.  *See In re T.S.M.*, 71 A.3d at 267.  Accordingly, we decline to reweigh the evidence and reassess witness credibility.

Based on the foregoing, we conclude that the trial court did not abuse its discretion by involuntarily terminating Father's parental rights to Child pursuant to Section 2511(a)(1) and (b).  Accordingly, we affirm the February 28, 2018 decree of the trial court.

Decree affirmed.

Nichols, J. joins this Memorandum.

Dubow, J. did not participate in the consideration or decision of this case.

J. S51031/18

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/7/18